1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BRANDY GONZALES,                    ) Case No. EDCV 13-1421-JPR
                                    )
                 Plaintiff,         )
                                    )
          vs.                       ) **MEMORANDUM OPINION AND ORDER**
                                    ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,                           )
                                    )
                 Defendant.         )
                                    )
_____ )

**I.    PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision

denying her applications for disability insurance benefits

("DIB") and supplemental security income ("SSI").  The parties

consented to the jurisdiction of the undersigned U.S. Magistrate

Judge under 28 U.S.C. § 636(c).  This matter is before the Court

on the parties' Joint Stipulation, filed May 14, 2014, which the

Court has taken under submission without oral argument.  For the

reasons stated below, the Commissioner's decision is affirmed and

judgment is entered in her favor.

1

1  **II.   BACKGROUND**

2      Plaintiff was born on November 18, 1975.  (AR 179.)  She did
3  not complete the 11th grade but obtained a high school diploma
4  through a "program."  (AR 34, 191.)  She previously worked as a
5  cashier at a gas station, customer-service representative, store
6  laborer, fast-food worker, and salesclerk.  (AR 48-51, 56, 191.)

7      Plaintiff filed an application for DIB on June 17, 2010, and
8  one for SSI on July 1, 2010.  (AR 175-82, 186.)  She alleged that
9  she had been unable to work since February 15, 2007,[1] because of
10 HIV, depression, carpal tunnel syndrome, chronic back pain, a
11 partial tear in her lateral meniscus, obesity, migraines, removal
12 of gallstones, and paranoia.  (AR 31, 190.)  After her
13 applications were denied, she requested a hearing before an
14 Administrative Law Judge.  (AR 95.)

15     A hearing was held on February 14, 2012.  (AR 31-58.)
16 Plaintiff, who was represented by counsel, testified, as did a
17 medical expert and a vocational expert.  (Id.)  In a written
18 decision issued April 27, 2012, the ALJ determined that Plaintiff
19 was not disabled.  (AR 11-24.)  On June 13, 2013, the Appeals
20 Council denied her request for review.  (AR 1-4.)  This action
21 followed.

22
23
24
25

26     [1]    Plaintiff later amended her alleged onset date to
27 September 26, 2009, which was the day after a prior application for
   benefits was denied.  (AR 11, 32, 70-77.)  Plaintiff did not
28 challenge the denial of her prior application beyond the Appeals
   Council stage.  (AR 32.)

1    **III. STANDARD OF REVIEW**

2         Under 42 U.S.C. § 405(g), a district court may review the

3    Commissioner's decision to deny benefits.   The ALJ's findings and

4    decision should be upheld if they are free of legal error and

5    supported by substantial evidence based on the record as a whole.

6    Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.

7    Astrue, 481 F.3d 742, 746 (9th Cir. 2007).   Substantial evidence

8    means such evidence as a reasonable person might accept as

9    adequate to support a conclusion.   Richardson, 402 U.S. at 401;

10   Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).   It

11   is more than a scintilla but less than a preponderance.

12   Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

13   Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether

14   substantial evidence supports a finding, the reviewing court

15   "must review the administrative record as a whole, weighing both

16   the evidence that supports and the evidence that detracts from

17   the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,

18   720 (9th Cir. 1996).   "If the evidence can reasonably support

19   either affirming or reversing," the reviewing court "may not

20   substitute its judgment" for that of the Commissioner.   Id. at

21   720-21.

22   **IV.   THE EVALUATION OF DISABILITY**

23        People are "disabled" for purposes of receiving Social

24   Security benefits if they are unable to engage in any substantial

25   gainful activity owing to a physical or mental impairment that is

26   expected to result in death or which has lasted, or is expected

27   to last, for a continuous period of at least 12 months.   42

28   U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

3

1  (9th Cir. 1992).

2      A.   The Five-Step Evaluation Process

3      The ALJ follows a five-step sequential evaluation process in

4  assessing whether a claimant is disabled.  20 C.F.R.

5  §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,

6  828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first

7  step, the Commissioner must determine whether the claimant is

8  currently engaged in substantial gainful activity; if so, the

9  claimant is not disabled and the claim must be denied.

10 §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not

11 engaged in substantial gainful activity, the second step requires

12 the Commissioner to determine whether the claimant has a "severe"

13 impairment or combination of impairments significantly limiting

14 her ability to do basic work activities; if not, a finding of not

15 disabled is made and the claim must be denied.

16 §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a

17 "severe" impairment or combination of impairments, the third step

18 requires the Commissioner to determine whether the impairment or

19 combination of impairments meets or equals an impairment in the

20 Listing of Impairments ("Listing") set forth at 20 C.F.R., Part

21 404, Subpart P, Appendix 1; if so, disability is conclusively

22 presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii),

23 416.920(a)(4)(iii).

24      If the claimant's impairment or combination of impairments

25 does not meet or equal an impairment in the Listing, the fourth

26 step requires the Commissioner to determine whether the claimant

27

28

4

has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since September 26, 2009.  (AR 14.)  At step two, the ALJ concluded that Plaintiff had severe impairments of "HIV; degenerative joint disease left knee; obesity and depressive disorder."  (Id.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing.  (AR 14-15.)  At step four, the ALJ determined that Plaintiff had the RFC to

lift and carry 10 pounds frequently and 20 pounds occasionally; [s]he could stand and walk up to 6 hours

---

[2]   RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545, 416.945; Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

5

1     out of an 8-hour day and she could sit up to 6 hours out

2     of an 8-hour day; occasional lift/carry 20 pounds,

3     freq[.] 10; occasional stairs, balance, stoop, kneel,

4     crouch, crawl; no ladders, scaffolds, ropes; no

5     unprotected heights, dangerous or fast moving machinery;

6     she is capable of routine tasks.

7 (AR 16.)  Based on the VE's testimony, the ALJ found that

8 Plaintiff was able to perform her past relevant work as a cashier

9 or fast-food worker.  (AR 24, 57.)  Thus, the ALJ found that

10 Plaintiff was not disabled.  (Id.)

11 **V.  DISCUSSION**

12     Plaintiff argues that the ALJ's RFC assessment and

13 credibility determination are not supported by substantial

14 evidence.  (J. Stip. at 4.)

15     A.   The ALJ's RFC Assessment Is Supported by Substantial

16         Evidence

17     Plaintiff contends that the ALJ's RFC assessment is not

18 supported by substantial evidence for two reasons.  First, the

19 ALJ relied on Dr. Steven Gerber's medical-expert opinion even

20 though the doctor did not review all the medical evidence of

21 record.  (J. Stip. at 4-5, 13-14.)  Second, the ALJ failed to set

22 forth legally sufficient reasons for rejecting the opinion of

23 Plaintiff's treating physician, Dr. Ann Dew, D.O.[3]  (Id. at 5-8,

24

25       [3]   Defendant suggests that Plaintiff's treating physician's
last name is "Do," apparently confusing it with the abbreviation

26 "D.O." following Dr. Dew's last name.  (J. Stip. at 10-13; see,
e.g., AR 248, 294.)  A "D.O." is a doctor of osteopathic medicine,

27 who, like a medical doctor, completes four years of medical school,
can practice any specialty, and is a licensed physician.  See

28 Doctor of Osteopathic Medicine, MedlinePlus, http://www.nlm.nih.

14-15.)

1.   <u>Applicable law</u>

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ must consider all the medical evidence in the record and "explain in [his] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources."  20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); <u>see also</u> §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case record").  In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints.  <u>See</u> <u>Bayliss</u>, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not

_____

gov/medlineplus/ency/article/002020.htm (last updated Sept. 8, 2014).  A doctor of osteopathic medicine is an acceptable medical source.  <u>See</u> 20 C.F.R. §§ 404.1513(a), 416.913(a).  Osteopathy adheres to the principle that a patient's history of illness and physical trauma are written into the body's structure.  <u>See</u> <u>Doctor of Osteopathic Medicine</u>, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/002020.htm.  Osteopathic physicians therefore complete additional training in the study of "hands-on manual medicine" and the body's musculoskeletal system to permit them to "feel (palpitate) the patient's 'living anatomy' (the flow of fluids, motion and texture of tissues, and structural makeup)."  <u>Id.</u>

depend on [claimant's] subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC those findings from treating-physician opinions that were "permissibly discounted").

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

When a treating or examining doctor's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.

        2.   Analysis

            a.   *The ALJ properly relied on Dr. Gerber's opinion*

The ALJ relied in part on Dr. Gerber's medical-expert testimony in fashioning Plaintiff's RFC. (AR 23.) The ALJ summarized Dr. Gerber's testimony that Plaintiff had HIV,

8

degenerative joint disease of the left knee,[4] and obesity. (AR
23, 52.) The ALJ noted that Dr. Gerber had opined that Plaintiff

> could lift and carry 10 pounds frequently and 20 pounds
> occasionally; she could stand and walk up to six hours
> out of an 8-hour day and she could sit up to 6 hours out
> of an 8-hour day; she was limited to occasional posturals
> but no ladders and scaffolds.

(AR 23, 53.) The ALJ noted that Dr. Gerber was an impartial
expert with a specialty in internal medicine and was therefore
well qualified to assess Plaintiff's limitations. (AR 23.) The
ALJ "concur[red]" with Dr. Gerber's assessment and incorporated
it into the RFC. (Id.)

In doing so, the ALJ noted that Dr. Gerber was subject to
cross-examination by Plaintiff's counsel. (Id.) The ALJ also
stated that Dr. Gerber "had an opportunity to review the
claimant's entire medical record." (Id.) Plaintiff contends
this finding was in error because Dr. Gerber testified he
reviewed records only through Exhibit B14F, while the record at
the time of the hearing consisted of records through Exhibit B16F
and the final record consisted of records through Exhibit B19F.
(J. Stip. at 5 (citing AR 52).)

Plaintiff's contention fails for a number of reasons.
First, as Defendant points out (J. Stip. at 9), even though
Plaintiff's counsel confirmed with Dr. Gerber the extent of his

---

[4]     The ALJ erroneously stated that Dr. Gerber testified that
Plaintiff's "right," as opposed to left, knee was a medically
determinable impairment.   (AR 23; see also AR 52.)    The ALJ
correctly identified the left knee in his finding of severe
impairments.   (AR 14.)

1  review of the medical evidence of record, he posed no objection

2  to his opinion based on an incomplete review of the evidence.

3  (AR 54); see Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)

4  ("We now hold that, at least when claimants are represented by

5  counsel, they must raise all issues and evidence at their

6  administrative hearings in order to preserve them on appeal.").

7  Second, ultimately it was within the ALJ's authority to

8  review all the medical evidence of record and fashion the RFC.

9  §§ 404.1546(c), 416.946(c) ("[T]he administrative law judge . . .

10 is responsible for assessing your residual functional

11 capacity."); see also §§ 404.1545(a)(1), 416.945(a)(1) ("We will

12 assess your residual functional capacity based on all the

13 relevant evidence in your case record."). Here, it is clear the

14 ALJ reviewed the entire record - through Exhibit B19F. (See AR

15 17-22, 28). Accordingly, Plaintiff's claim fails. See Heiman v.

16 Astrue, No. EDCV 11-486(OP), 2011 WL 4829924, at *3-5 (C.D. Cal.

17 Oct. 11, 2011) (claimant's argument that medical-expert and

18 state-agency opinions did not constitute substantial evidence

19 because doctors did not have access to later records lacked

20 merit; "even if the ME and the State agency physicians did not

21 have [the] records, the ALJ did," and she carefully considered

22 evidence).

23 Finally, Plaintiff has failed to show how she was

24 prejudiced. Plaintiff has failed to identify, at any stage of

25 the administrative proceedings (AR 223-24, 228-29) or here, any

26 document within the exhibits not reviewed by Dr. Gerber that

27 could change the ALJ's decision. (See AR 337-496.) Indeed, the

28 exhibits primarily comprise laboratory results and progress

10

1  notes, none of which discuss Plaintiff's ability to work.  Some

2  relate to Plaintiff's mental health, as to which she has not

3  challenged the ALJ's findings, or to a breast abnormality

4  unrelated to her claims of disability.  The evidence contains no

5  assessment of Plaintiff's functional limitations with the

6  exception of a Riverside County Department of Mental Health

7  "Consumer Care Plan," dated October 21, 2009.  (AR 425.)  This

8  document states that Plaintiff had a history of substance abuse

9  "which has impaired her ability to function [at] work, [and]

10  maintain healthy communication [and] relationships."  (Id.)  But

11  the document says nothing about the extent of her limitation and

12  indicates that it is due to substance abuse, not one of the

13  severe impairments found by the ALJ.  (Id.)  In any event, the

14  document is duplicative of records found in exhibits Dr. Gerber

15  indicated he reviewed.  (Compare AR 254, 298 with AR 425.)  As

16  such, any error in the ALJ's statement that Dr. Gerber reviewed

17  the entire record was harmless.  See Stout v. Comm'r Soc. Sec.

18  Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or

19  irrelevant mistakes harmless).

20      As a final contention related to Dr. Gerber, Plaintiff

21  argues she was denied procedural due process because she

22  requested a supplemental hearing to take additional testimony

23  from Dr. Gerber but her request was never acted upon or

24  acknowledged.  (J. Stip. at 5, 14.)  She claims that under the

25  Agency's Hearings, Appeals, and Litigation Law Manual ("HALLEX"),

26  the ALJ was required to grant the request unless he issued a

27  fully favorable decision.  (Id.)  As an initial matter, the

28  HALLEX is an internal policy manual that does not impose

11

judicially enforceable duties on the ALJ.  See Lockwood v. Comm'r
Soc. Sec. Admin., 616 F.3d 1068, 1072 (9th Cir. 2010) ("HALLEX
does not impose judicially enforceable duties on either the ALJ
or this court."); see also Clark v. Astrue, 529 F.3d 1211, 1216
(9th Cir. 2008) ("HALLEX is strictly an internal Agency manual,
with no binding legal effect on the Administration or this
court.")  Moreover, the two provisions of the HALLEX Plaintiff
contends entitled her to a supplemental hearing do not by their
very terms apply.  (J. Stip. at 5, 14.)  HALLEX I-2-5-44 applies
when an ALJ receives a medical expert's responses to
interrogatories, see HALLEX, I-2-5-44, http://ssa.gov/OP_Home/
hallex/I-02/I-2-5-44.html (last updated Aug. 29, 2014), which did
not happen here.  HALLEX I-2-7-30-H applies when the ALJ receives
posthearing evidence and states that the ALJ must proffer such
evidence unless it was submitted by the claimant or the
claimant's representative.  See HALLEX, I-2-7-30-H,
http://ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html (last updated
Sept. 2, 2005).  The only posthearing evidence submitted in this
case came from the Plaintiff's attorney.  (AR 31-32, 475.)  Thus,
Plaintiff has not shown she was denied procedural due process.

                    b.   *The ALJ properly rejected Dr. Dew's opinion*
     Plaintiff contends that the ALJ failed to provide legally
sufficient reasons for discounting the opinion of Dr. Dew, her
longtime treating physician.  (J. Stip. at 5-8, 14-15.)
     On July 29, 2010, Dr. Dew completed a two-page "Physician's
Statement" regarding Plaintiff.  (AR 293-94.)  She checked boxes
indicating that Plaintiff did not appear chronically ill but was
visibly fatigued.  (AR 293.)  She indicated the cause of the

                              12

fatigue as HIV, morbid obesity, and back pain.  (<u>Id.</u>)

Also largely in check-off form, Dr. Dew opined that Plaintiff could lift and carry five pounds frequently and 20 pounds occasionally.  (<u>Id.</u>)  She indicated that Plaintiff could stand and walk for two to four hours and could sit for up to six hours in an eight-hour day.  (<u>Id.</u>)  She also indicated that Plaintiff should walk for five minutes every half hour.  (<u>Id.</u>)  Dr. Dew provided the following handwritten notes regarding Plaintiff's functional level:

> [Patient] is bright and interacts well with clinic staff, patient's ability to work limited by chronic back pain, fatigue due to obesity and low level positions.  Has been directed to apply to California Occ Rehab Program.

(<u>Id.</u>)

On the second page of the statement, Dr. Dew filled in Plaintiff's viral load, latest T-Cell count, HIV results, and height and weight.  (AR 294.)  She indicated that the following objective findings supported her statement: (1) "on residual functional capacity eval 3/10 [¶] obese, gait [], ROM of back (trunk @ waist) limited by obesity, TTP T10 [and] L3-S over spinous process [and] paravertebral muscles"; (2) "LS spine X rays 10-19-09: splinting of lumbar spine to the left, marginal spurring; (3) MRI (L) knee 3/4/10: (L) knee patellar tendon pathology, degen[.] change lateral meniscus[.]"  (<u>Id.</u>)  Finally, Dr. Dew checked the box indicating no diagnosed mental impairment but noted that Plaintiff had been referred in 1999 to the Riverside Early Intervention Program.  (<u>Id.</u>)

The ALJ gave specific and legitimate reasons for giving

13

1    "little weight" to Dr. Dew's opinion.  (AR 22-23.)

2          The ALJ acknowledged that a treating physician's opinion is

3    entitled to "special significance" and, when supported by

4    objective evidence and consistent with otherwise substantial

5    evidence of record, is entitled to controlling weight.  (Id.)

6    However, the ALJ discounted Dr. Dew's statement in part because

7    it was made on a "fill-in-the-blank form, with only marginal

8    notes attached to it."  (Id.)  Further, the ALJ indicated that

9    the statement "failed to cite any medical testing or objective

10   observations to support her conclusions" as to Plaintiff's RFC.

11   (Id.)

12         Plaintiff contends that the ALJ erred because Dr. Dew in

13   fact did cite objective findings to support her statement.  (J.

14   Stip. at 5.)  While it is true that Dr. Dew included handwritten

15   notations purporting to list the objective evidence supporting

16   her opinion, that evidence was in fact not objective, not in the

17   record, or considered and discounted by the ALJ.  For example,

18   Dr. Dew appears to have referenced her own prior RFC opinion as

19   objective evidence supporting her statement.  (AR 294.)  But her

20   own prior opinion as to Plaintiff's RFC, a matter reserved for

21   the ALJ, does not constitute "objective" evidence.  See Vertigan

22   v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that

23   it is the responsibility of the ALJ, not the claimant's

24   physician, to determine residual functional capacity."); Trujillo

25   v. Astrue, No. ED CV 10-00153 RZ, 2010 WL 4916630, at *1 (C.D.

26   Cal. Dec. 1, 2010) ("presumably an opinion is not 'objective'

27   medical evidence").  Moreover, it does not appear that this prior

28   RFC assessment is in the record.

                                    14

The other two pieces of objective evidence referenced by Dr. Dew — x-rays of Plaintiff's back and an MRI of her left knee — had already been considered in the ALJ's assessment of her RFC. (AR 20-21.)  The ALJ specifically discussed the findings of the March 4, 2010 MRI mentioned in Dr. Dew's opinion, including Plaintiff's patellar tendon pathology and "mild" degenerative changes of the lateral meniscus.  (AR 20, 255, 258.)  The ALJ found Plaintiff's degenerative joint disease in her knee to be a "severe" impairment but nonetheless concluded that the objective findings regarding her knee derangement were "minimal to moderate."  (Id.)  As to Plaintiff's back, the ALJ considered a December 2009 x-ray of it, which showed minimal lipping of the lumbar spine but probable spasm.  (AR 17, 393.)  Plaintiff does not contend that the October 2009 x-ray referenced by Dr. Dew is better evidence than the later x-ray, if it even exists.  (J. Stip. at 6.)  It too does not appear to be in the record. Presumably, when the ALJ stated that Dr. Dew failed to cite objective evidence supporting her opinion, the ALJ meant that she failed to cite actual objective evidence in the administrative record or evidence not already considered by the ALJ and found not to support a finding of disability.  Beyond those notations, Dr. Dew offered merely her conclusory check-offs and notations as the basis of her opinion.  The ALJ could properly discount her opinion for that reason.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); accord Batson, 359 F.3d at 1195; see also De Guzman

1  v. Astrue, 343 F. App'x 201, 209 (9th Cir. 2009) (ALJ was "free
2  to reject" doctor's check-off report that did not explain basis
3  for conclusion); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.
4  1983) (expressing preference for individualized medical opinions
5  over check-off reports).

6      Next, the ALJ concluded that Dr. Dew's opinion conflicted
7  with the substantial evidence of record documenting less severe
8  limitations.  (AR 22-23.)  For example, the ALJ noted the
9  findings of examining state-agency medical consultant Dr. F.
10  Kalmar.  (AR 23.)  On August 13, 2010, Dr. Kalmar opined that
11  Plaintiff was limited to a range of medium work: she could lift
12  and carry 25 pounds frequently and 50 pounds occasionally; she
13  could stand or walk and sit up to six hours each in an eight-hour
14  day; she could occasionally climb ladders, ropes, or scaffolds;
15  she could frequently climb ramps and stairs; she could frequently
16  balance, stoop, kneel, crouch, and crawl; and she should avoid
17  concentrated exposure to extreme heat and hazards, such as
18  machinery and heights.  (AR 301-03.)  Dr. Kalmar also found no
19  manipulative or visual limitations.  (AR 303.)

20      The ALJ further noted the medical-expert testimony of Dr.
21  Gerber, summarized above, which also conflicted with Dr. Dew's
22  opinion.  As mentioned, the ALJ concurred with Dr. Gerber and
23  included the doctor's restrictions in the RFC.  (AR 23.)
24  Finally, the ALJ noted that state-agency medical consultants
25  found Plaintiff's psychiatric impairments to be nonsevere and
26  that they adopted the prior ALJ's mental-health findings.  (Id.)
27  The ALJ found that Plaintiff's mental condition had not
28  materially changed since the 2009 decision and noted that at that

16

time she was not in consistent psychiatric treatment and the decision was based primarily on a one-time consultative examination in 2008.  (Id.)  After the 2009 decision, the ALJ noted, Plaintiff had fairly consistent psychiatric care, showing depressed mood and mildly decreased concentration, and he therefore limited Plaintiff to simple tasks.  (Id.)  Plaintiff has not challenged here the ALJ's findings concerning her mental health.

Plaintiff does not address the conflict between her treating physician's opinion and Dr. Kalmar's and Dr. Gerber's opinions other than to assert that the latter were "stale."  (J. Stip. at 6.)  Plaintiff complains that no state-agency physician reviewed records after Dr. Kalmar did on August 13, 2010.  (Id.)  But by that reasoning Dr. Dew's opinion is even less relevant, having been completed before Dr. Kalmar's.  (AR 294.)  In fact, Dr. Kalmar considered Dr. Dew's opinion in making the state-agency assessment.  (AR 307.)  Similarly, Dr. Gerber's assessment is the least stale, as he reviewed documents more recent than those reviewed by Dr. Kalmar or Dr. Dew and was cross-examined by Plaintiff's counsel at the hearing on February 14, 2012.  (AR 31, 52-53.)

Except for Dr. Gerber's testimony, Plaintiff does not specifically challenge any of the evidence relied on by the ALJ as supporting the RFC: (1) "a history of well controlled HIV [with] no documentation of severe or persistent fatigue, diarrhea, night sweats, or opportunistic infections"; (2) "a treatment history for depression with allegations of psychotic features, without evidence of the same on examinations"; and

17

(3) "mild degeneration of the lumbar spine and left knee with conservative treatment, a normal gait, normal motor strength, full range of motion and no neurologic deficits." (AR 23.) That Dr. Dew's opinion that Plaintiff was more functionally restricted was not supported by objective evidence in the record and was contradicted by the findings of state-agency physicians were legitimate bases upon which to discount her opinion. See §§ 404.1527(c)(4), 416.927(c)(4) (explaining that more weight should be afforded to medical opinions that are consistent with the record as a whole); Batson, 359 F.3d at 1195 (holding that ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227-28 (9th Cir. 2009) (upholding RFC determination when ALJ relied on state-agency physician's opinion over that of treating physician).

Remand is not warranted on this basis.

B.   **The ALJ Did Not Err in Assessing Plaintiff's Credibility**

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence. (J. Stip. at 15-19, 23-24.)

1.   **Applicable law**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability

benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).

Absent affirmative evidence of malingering, those findings must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

    2.  Analysis

Contrary to Plaintiff's contention, the ALJ provided clear and convincing reasons for discounting her credibility. The ALJ found her allegations of disabling pain to be inconsistent with

19

the objective medical evidence, her conservative treatment, and reports to her treating physician about her restrictions on daily activities.

With respect to the medical evidence, the ALJ conducted an exhaustive summary of Plaintiff's complaints and lack of corresponding objective evidence. Regarding Plaintiff's HIV, the ALJ noted Plaintiff's testimony that she had daily diarrhea, fatigue, and night sweats but observed that those symptoms were not reflected in the record, with the exception of one report of night sweats.[5] (AR 20, 41, 246 (reporting on Dec. 1, 2009 no diarrhea), 364 (reporting "sweats" on July 21, 2010).) Regarding her knee pain, as previously mentioned, the ALJ found the objective findings "minimal to moderate." (AR 20.) Specifically, although records showed she had a documented knee derangement, later objective evidence showed a lack of severity. The ALJ noted that a July 21, 2010 progress note indicated Plaintiff had full range of motion and her strength was intact in all her extremities. (AR 20, 363.) Further, the ALJ noted that a physical examination in September 2010 revealed "normal" results for her extremities, including a finding of no edema. (AR 20, 309, 328.) Regarding her ankle pain, the ALJ noted that other than one instance in June 2010, there were no records

---

[5] In an HIV questionnaire, Plaintiff self-reported these symptoms. (AR 198-99.) However, it is unclear whether this questionnaire reflected symptoms during the relevant period, as it is undated and only three of its purported six pages appear in the record. (AR 198-200.) On another occasion, Plaintiff reported "cold clammy sweats," but they occurred on October 22, 2008, before the relevant period. (AR 239.) Plaintiff admitted at the hearing that her HIV was "under control," and other evidence of record indicates the same. (AR 40, 345, 433, 437.)

showing joint swelling.  (AR 20.)  Regarding Plaintiff's hand
pain and allegations of carpal tunnel syndrome, "there is no
confirmed diagnosis in file."  (<u>Id.</u>)  Further, the ALJ noted that
there is "no medical evidence that the claimant's obesity
prevents her from performing routine movements and necessary
physical activity in an ordinary work environment on a regular or
continuing basis."  (AR 21.)  Finally, regarding Plaintiff's
allegations of hallucinations and paranoia, the ALJ noted that
there were "no observations of her responding to internal stimuli
or displaying floridly psychotic behaviors."  (<u>Id.</u>)

Plaintiff does not point to any evidence in the record
undermining any of the above findings or that is consistent with
her asserted symptoms, instead contending only that "[t]he ALJ
cannot reject the claimant's testimony based solely on the
alleged lack of objective medical evidence corroborating it."
(J. Stip. at 18.)  It is true that an ALJ may not disregard a
claimant's subjective symptom testimony "solely because it is not
substantiated affirmatively by objective medical evidence."
<u>Robbins</u>, 466 F.3d at 883; <u>see also</u> <u>Bunnell v. Sullivan</u>, 947 F.2d
341, 346-47 (9th Cir. 1991) (en banc).  The ALJ may, however, use
the medical evidence in the record as one factor in the
evaluation.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir.
2005) ("Although lack of medical evidence cannot form the sole
basis for discounting pain testimony, it is a factor that the ALJ
can consider in his credibility analysis."); <u>accord</u> <u>Kennelly v.
Astrue</u>, 313 F. App'x 977, 979 (9th Cir. 2009).  Here, as
explained below, the ALJ's credibility determination was
supported by at least one other clear and convincing reason;

21

1  thus, there was no error.

2      With respect to Plaintiff's low-back pain, the ALJ noted

3  that her treatment was "very conservative" and that no doctor had

4  recommended surgical intervention.  (AR 21, 37, 47.)  Plaintiff's

5  treatment was simply "heat to back."  (AR 394.)  Further, with

6  respect to her allegations of debilitating pain, the ALJ noted

7  that Plaintiff was not currently taking any prescription pain

8  medications.  (AR 22.)  The ALJ also noted that Plaintiff was

9  given over-the-counter Motrin[6] for her knee pain and that she was

10  not required to take stronger analgesics or narcotics to manage

11  her joint pain.  (AR 22, 226, 344-45, 433, 436-37, 479.)

12  Plaintiff's reliance on and response to conservative treatment is

13  a clear and convincing reason to discount her allegations of

14  disabling impairments.  See Tommasetti v. Astrue, 533 F.3d 1035,

15  1040 (9th Cir. 2008) (holding that claimant's response to

16  conservative treatment undermined his reports of disabling

17  symptoms); Parra, 481 F.3d at 751 (noting that "evidence of

18  'conservative treatment' is sufficient to discount a claimant's

19  testimony regarding severity of an impairment"); Pruitt v.

20  Astrue, No. CV 11-8158-E, 2012 WL 2006150, at *2 (C.D. Cal. June

21  5, 2012) (Motrin is conservative treatment); compare Lapeirre-

22  Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment

23  with narcotic pain medication, occipital nerve blocks, trigger-

24  point injections, and cervical-fusion surgery not conservative).

25

26      [6]    Motrin is a brand of ibuprofen, which is a nonsteroidal
   anti-inflamatory drug used to treat "mild to moderate" pain.  See
27  Ibuprofen,  PubMed  Health,  www.ncbi.nlm.nih.gov/pubmedhealth/
   PMHT0010648/ (last updated Aug. 1, 2014); Oregon ex rel. Kroger v.
28  Johnson & Johnson, 832 F. Supp. 2d 1250, 1252 (D. Or. 2011).

The ALJ also noted Plaintiff's testimony about her limited daily activities, including that she could walk only a block, sit for a half hour, and lift and carry five pounds.  (AR 22, 39-40.) The ALJ discussed the difficulty in assessing this testimony and discounted it in part because of the lack of objective evidence supporting it.  (AR 22.)  The ALJ also discounted the testimony because Plaintiff did not report any severely constrained daily activities or symptoms to her own physician.  (Id.)  Plaintiff's testimony about her inability to walk a block did not appear in Dr. Dew's opinion or other records.  (AR 293-94.)  Further, her testimony that she could lift and carry only five pounds conflicted with Dr. Dew's assessment that she could lift and carry five pounds frequently and 20 pounds occasionally.  (AR 22, 293.)  The ALJ could properly consider Plaintiff's omissions to her own treating physician and the conflict between Plaintiff's testimony and her doctor's assessment as legitimate reasons for discounting her credibility.  See Lingenfelter, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence"); see also Tommasetti, 533 F.3d at 1039 (holding that ALJ may consider many factors in weighing claimant's credibility, including "ordinary techniques of credibility evaluation, such as . . . inconsistent statements concerning the symptoms . . . and . . . the claimant's daily activities"); Morillas v. Astrue, 371 F. App'x 880, 883 (9th Cir. 2010) (ALJ reasonably discounted testimony about side effects of medications when "[n]othing in the medical records reflected any complaint to her health providers that her medications made her drowsy, and there was no

evidence of any assessed functional limitation from her medications").[7]

This Court is limited to determining whether the ALJ properly identified reasons for discrediting Plaintiff's credibility. Smolen, 80 F.3d at 1284. The inconsistencies between Plaintiff's allegations and the medical evidence and her conservative treatment were proper and sufficiently specific bases for discounting her claims of disabling symptoms, and the ALJ's reasoning was clear and convincing. See Tommasetti, 533 F.3d at 1039-40; Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012). Because the ALJ's findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959.

Remand is not warranted on this ground.

---

[7]     Plaintiff contends that under Soto-Olarte v. Holder, 555 F.3d 1089, 1092 (9th Cir. 2009), once a perceived inconsistency between the written record and the oral testimony arises, the ALJ must confront the claimant with the inconsistency and address any explanation, which the ALJ did not do here. (J. Stip. at 23.) Soto-Olarte held that an immigration judge cannot base an adverse credibility determination on a discrepancy without first asking an asylum applicant about it and providing an opportunity to explain. 555 F.3d at 1092. Plaintiff has not shown that this case applies in the Social Security context.

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 17, 2014          _Jean Rosenbluth_____
                                   JEAN ROSENBLUTH
                                   U.S. Magistrate Judge

_____

[8]     This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."